UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL M.,<br><br>                        Plaintiff,<br><br>v.<br><br>Kilolo KIJAKAZI, Acting Commissioner of Social Security,<br><br>                        Defendant. | Case No.: 20-cv-2378-AGS<br><br>**ORDER ON SUMMARY-JUDGMENT MOTION (ECF 12)** |

    The disability claimant here claims to suffer from a poorly understood condition: Gulf War Illness. The Social Security judge ended the five-step disability analysis at Step 2, concluding that claimant's Gulf War Illness not only wasn't "severe," but that it wasn't even a medically determinable impairment. The issue is whether the judge was correct or whether he halted the analysis too soon.

## **BACKGROUND**

    Plaintiff Raul M. is a veteran of the 1990–91 Gulf War. (ECF 12, at 1.) Since his return from that conflict, Raul alleges he has "suffered from a constellation of symptoms" that eventually "forced [him] to stop working." (ECF 12, at 1.) He ultimately applied for Social Security disability benefits, alleging a January 2016 onset. (AR 21.)

    After a disability hearing, the Administrative Law Judge began the required five-step sequential evaluation process for disability determinations. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ stopped at Step 2, after concluding that Raul "did not have a severe impairment or combination of impairments." (AR 24.) Specifically, the ALJ determined that Raul's "alleged cognitive deficits, chronic fatigue syndrome, and Gulf War Illness" did *not* qualify as "medically determinable impairments" at all. (AR 23.) And although the ALJ identified five other medically determinable impairments— "hypertension, chronic kidney disease, borderline obesity, [c]eliac disease, and tinnitus"— he ruled that none was "severe," even when combined. (AR 23-24.) With no severe impairments, the ALJ concluded that Raul was not disabled. (AR 28.)

## STANDARD OF REVIEW

A court may set aside the Social Security Administration's denial of benefits only when "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record" as a whole. *See Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016); *see also* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but may be less than a preponderance." *Attmore*, 827 F.3d at 875 (quotation marks omitted). When the evidence is "susceptible to more than one rational interpretation," a court must defer to the ALJ. *Id*. Even when the ALJ errs, "we must affirm if the error is harmless." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015).

## DISCUSSION

On appeal, Raul argues that the ALJ erred in finding no severe medically determinable impairments.[1]

### A.  Step 2: Severe Impairment

At Step 2, claimant bears the burden of showing a medically "severe impairment" or "combination of impairments." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see also* § 404.1520(a)(4)(ii). That burden is slight. Step 2 is a "de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (alterations omitted). At this step, every impairment is "severe" unless the medical evidence "clearly establishe[s]" a "slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* at 686–87.

#### 1.  Gulf War Illness

The ALJ found that Raul's Gulf War Illness was not a medically determinable impairment, without reaching the severity issue. (AR 23.) But two different doctors and a

---

[1] Raul also complains about the ALJ's treatment of his chronic-fatigue-syndrome diagnosis, his treating medical professionals' opinions, and his wife's supporting statement. As the Court finds the Gulf War Illness issue determinative, it need not reach those arguments.

physician's assistant concluded that Raul suffered from Gulf War Illness, and Raul participated in research studies that supported that diagnosis. (*See* AR 27, 308, 370, 410, 429, 440–42.) For example, one "bioenergetic marker" study demonstrated that a control group required an average "post-exercise phosphocreatine recovery time" of "under 30.5 seconds," versus recoveries exceeding "35 seconds" for "veterans meeting criteria for Gulf War illness." (AR 308.) By comparison, Raul's result was "40 seconds, a notably elevated value, indicative of bioenergetic impairment and consistent with the mitochondrial compromise in Gulf War illness . . . ." (AR 308.)

The ALJ disregarded this study on the ground that it "had no scientific basis to support the opinion," ultimately deciding that "there was insufficient evidence to show that this was a scientific study with reliable results." (AR 24, 26.) But the ALJ provided no reasoning to support his conclusion that it was unscientific. The study was organized by a recognized academic institution, funded partly by the government, led by an M.D./Ph.D., and published in a peer-reviewed journal. (*See* AR 431–32.) If the ALJ had doubts about the validity of the study, he had "an affirmative duty to supplement [the] medical record . . . before rejecting [the] petition at so early a stage in analysis." *See Webb*, 43 F.3d at 687; *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of [the doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them . . . [or otherwise] augment[ing] the record." (citations omitted)). Thus, the ALJ erred by concluding Raul did not establish a Gulf War Illness impairment.

**2. Harmlessness**

The question is whether that error was harmless. "An error is harmless only if it is inconsequential to the ultimate nondisability determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (citation and quotation marks omitted). The problem here is that this error cascades through the ALJ's severity analysis.

If the ALJ had accepted Raul's testimony, he would have had to find him severely impaired for Step 2 purposes, which would compel the ALJ to "move to the next step." *See*

*Edlund v. Massanari*, 253 F.3d 1152, 1159–60 (9th Cir. 2001) (citations omitted), *as amended on reh'g* (Aug. 9, 2001). Raul testified that he "couldn't function anymore" at his job due to "chronic fatigue that caused [him] to have mental confusion or brain fog, lack of concentration, short-term memory loss, dizziness that last[ed] all day, muscle weakness," and stomach issues, including "irritable bowel syndrome" and "diarrhea." (AR 41–43.) This litany amounts to much "more than a minimal effect" on Raul's ability to work. *See Webb*, 433 F.3d at 686–87. And the ALJ was required to consider all such "symptoms" in evaluating whether Raul had "severe physical or mental impairment(s)." *See* 20 C.F.R. § 404.1529(d). Indeed, ALJs may only "reject the claimant's testimony" about symptom severity if they offer "specific, clear and convincing reasons" to do so— "the most demanding [standard] required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014).

      The ALJ gave two reasons for discounting Raul's testimony: (1) the lack of supporting objective medical evidence and (2) the lack of treatment for his conditions. The ALJ focused almost exclusively on the first rationale, writing at length on how the objective medical record conflicted with Raul's testimony. (*See* AR 25–28.) But he was required to "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion." *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (alteration omitted). Raul's Gulf War Illness diagnosis from two doctors and a physician's assistant—and the laboratory study confirming he suffered from the disease—*are* objective medical evidence that support his testimony. (*See* AR 410, 429 (Physician Assistant Baldwin); AR 308 (Dr. Golomb and the study); AR 370, 440–42 (Dr. Diaz).) Because the ALJ erroneously gave this medical evidence no credence, he failed to grapple with how closely Raul's testimony aligned with the symptoms of Gulf War Illness. *See* 38 U.S.C. § 1117(g) (defining Gulf War Illness to include otherwise "undiagnosed" "symptoms" of "Fatigue," "Muscle pain," "Neurological signs and symptoms," "Neuropsychological signs or symptoms," and "Gastrointestinal signs or symptoms"); *Gulf War Syndrome*, Stedman's Medical Dictionary § 880490 (listing

symptoms of "fatigue, musculoskeletal pain, headaches, dyspnea, memory loss, and diarrhea"); (AR 429 (Raul's treating physician assistant explaining that the 2018 studies "strongly suggested" that Raul's "Gulf War illness is due to mitochondrial damage" and noting that this "leads to multiple symptoms spanning from fatigue, cognitive and other brain related challenges, muscle problems and exercise intolerance")). The ALJ was not permitted to ignore the objective testing that supported Raul's testimony simply by deeming it unscientific, without further elaboration. *See Attmore*, 827 F.3d at 875 (holding that the ALJ "must consider the record as a whole").

The ALJ's only other justification for doubting Raul's testimony was Raul's "lack of treatment other than vitamins." (AR 26.) While the ALJ "is permitted to consider lack of treatment in his credibility determination," *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005), this circumstance cannot be held against Raul "without considering possible reasons [claimant] may not . . . seek treatment consistent with the degree of his or her complaints." *See* SSR 16-3P, 2017 WL 5180304, at *9 (Oct. 25, 2017). The record raises some ambiguity about why Raul did not obtain more treatment. For example, Raul was referred for a rheumatological consult, but was rejected for unknown reasons. (AR 396 ("rheumatology will not take the [patient]").) Similarly, the record suggests Raul canceled an EGD test "because he was scared of doing it." (AR 456); *see Ma v. Berryhill*, No. 17-CV-05696-RS, 2019 WL 1090389, at *5 (N.D. Cal. Mar. 8, 2019) (reversing an ALJ's reliance on lack of treatment when claimant "refus[ed] to take an epidural shot" because he was "scared" and believed it was "invasive"). "[W]hen there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence," the ALJ has a "duty to develop the record further." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). The ALJ had such a duty here and could not hold any lack of treatment against Raul without resolving these concerns.

At any rate, neither rationale meets the high bar of specific, clear, and convincing reasons to disregard Raul's testimony. The Court cannot conclude that the failure to grapple with Raul's Gulf War Illness—some of the only objective evidence in the record to support

5

his testimony—was harmless. Thus, the ALJ's decision must be reversed. *See also* SSR 85-28, 1985 WL 56856, at *4 (Jan. 1, 1985) ("If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step.").

### B.   Remand Type

A court may remand for an immediate award of benefits when, among other things, "the ALJ would be required to find the claimant disabled on remand," "further administrative proceedings would serve no useful purpose," *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014), and the record as a whole leaves "not the slightest uncertainty as to the outcome of [the] proceeding." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). While the Court reverses the ALJ's decision, it shares his concern about the sparse medical evidence supporting Raul's disability claim. Additionally, the ALJ on remand may wish to consult with a consultative examiner concerning the impact of Raul's Gulf War Illness. In either event, the Court is left with more than the "slightest uncertainty" as to whether Raul is disabled, and thus a remand for additional proceedings is appropriate.

## CONCLUSION

Raul M.'s summary-judgment motion (ECF 12) is granted. The case is remanded for further proceedings consistent with this opinion. The Clerk is directed to issue a judgment and close this case.

**REVERSED and REMANDED**.

Dated:  September 8, 2022

_____
Hon. Andrew G. Schopler
United States Magistrate Judge